**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| JENNIFER A. PAYNE, Individually, and as Personal Representative of the Estate of Mark R. Payne, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:14-cv-00309-TWP-MJD |
| PENTEGRA RETIREMENT SERVICES, PENTEGRA DEFINED BENEFIT PLAN FOR FINANCIAL INSTITUTIONS, PLAN ADMINISTRATOR OF THE PENTEGRA DEFINED BENEFIT PLAN FOR FINANCIAL INSTITUTIONS, and UNITED STATES OF AMERICA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**ORDER ON MOTIONS TO DISMISS AND
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

This matter is before the Court on three pending motions: a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) by Defendant the United States of America (Filing No. 31), a Motion to Dismiss and to Strike filed pursuant to Rules 12(b)(6) and 12(f) by Defendants Pentegra Retirement Services, Pentegra Defined Benefit Plan for Financial Institutions, and Plan Administrator of the Pentegra Defined Benefit Plan for Financial Institutions (collectively, "Pentegra") (Filing No. 21), and a Motion for Leave to File Amended Complaint filed by Plaintiff Jennifer A. Payne ("Mrs. Payne") (Filing No. 47). For the following reasons, the Court **GRANTS** the Motion to Dismiss filed by the United States, **GRANTS** the Motion to Dismiss and to Strike filed by Pentegra, and **DENIES** the Motion for Leave to File Amended Complaint filed by Mrs. Payne.

## I. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). In determining whether subject matter jurisdiction exists, the court accepts as true all well-pled facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Int'l Harvester Co.*, 623 F.2d at 1210.

When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

> Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may either strike on its own or on a motion by a party and has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter.

*Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). The district court's decision on a motion to strike should not be arbitrary or unreasonable. *Id.* "[T]he general rule [is] that motions to strike are disfavored. This is because motions to strike potentially serve only to delay. But where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (internal citation omitted).

After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). The rule, however, "do[es] not mandate that leave be granted in every case. In particular, a district court may deny a plaintiff leave to amend his complaint if there is undue delay, bad faith[,] or dilatory motive . . . [, or] undue prejudice . . . , [or] futility of amendment." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (internal citation and quotation marks omitted). A proposed amendment is futile if it "fails to cure the deficiencies in the original pleading, or could not survive a [] motion to dismiss." *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991). "Whether to grant or deny leave to amend is within the district court's discretion." *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

## II. BACKGROUND

Mark Payne ("Mr. Payne"), the late husband of Plaintiff Mrs. Payne, worked for more than thirty years for the Federal Home Loan Bank, which was merged into the Office of the Comptroller

of the Currency ("OCC"). Mr. Payne worked as a Field Manager in the Indianapolis, Indiana office, and, as an employee, he was a participant in the Pentegra Defined Benefit Plan for Financial Institutions ("Pentegra Defined Benefit Plan"). The OCC engaged or assigned the Pentegra Defined Benefit Plan to Pentegra, as the third-party administrator of the plan.

While employed by the OCC, Mr. Payne was diagnosed with a brain tumor in December 2010. After Mr. Payne's first surgery on December 27, 2010, the Paynes learned that Mr. Payne's tumor was a gliablastoma tumor, the deadliest type of brain tumor. Mr. Payne's physicians informed him that the life expectancy for this type of tumor was approximately twelve to sixteen months. During the next fifteen months, Mr. Payne endured two additional surgeries as well as weeks of radiation and chemotherapy. Mr. Payne also experienced seizures, memory loss, difficulties in speech and comprehension, and other neurological deficits prior to his death on March 5, 2012.

Shortly after Mr. Payne's diagnosis in December 2010, the Paynes began working with Valerie Waller ("Ms. Waller"), the Lead Expert for Compensation and Benefits at the OCC in Washington, D.C., to discuss Mr. Payne's life insurance and pension benefits. Mr. Payne wanted to ensure that Mrs. Payne and their two children would be taken care of after his death. The Paynes sought advice from Ms. Waller regarding the full impact of their options under the Pentegra Defined Benefit Plan. The Paynes and Mr. Payne's supervisor, Jill Hoyle ("Ms. Hoyle"), communicated with Ms. Waller on a frequent and regular basis to discuss questions and to confirm information related to Mr. Payne's life insurance and the Pentegra Defined Benefit Plan.

In October 2011, Mr. Payne requested that Ms. Waller provide pension calculations as of November 1, 2011 and April 1, 2012, so that the Paynes could understand their various options. Mr. Payne also requested that all options be explained to him in detail. The Paynes wanted this

information to decide which option would benefit them the most. In mid-October 2011, Mr. Payne received an estimate of the pension benefits from Pentegra and Ms. Waller. The estimated pension benefit as of November 1, 2011 was a lump sum payout of approximately $975,557.00, or an annuity of approximately $57,480.00. The Paynes decided that the annuity was the best option for Mrs. Payne as it provided a lifetime payout to Mrs. Payne.

In January 2012, the Paynes, Ms. Waller, and Ms. Hoyle participated in a telephone conference call regarding Mr. Payne's options. During the call, Ms. Waller advised Mr. Payne to wait 120 days before he filed for a disability retirement. Ms. Waller explained there was no reason for Mr. Payne to retire earlier than the 120 days. But Ms. Waller failed to advise the Paynes that the pension figures would differ substantially if Mr. Payne died while in active service rather than after he retired. When the benefits calculation was eventually provided by Pentegra, Ms. Waller admitted that she did not know there would be a significant difference in benefits based on retirement. Ms. Waller was wrong in this understanding when she advised Mr. and Mrs. Payne in January 2012.

On March 15, 2012, soon after Mr. Payne died, Mrs. Payne spoke with Ms. Waller and Damien Samuals ("Mr. Samuals"), another OCC employee, regarding Mr. Payne's pension benefits. Ms. Waller explained that the annuity payout had not been calculated but stated that it would not be significantly different from the information that was sent to the Paynes in October 2011. Ms. Waller specifically stated that it would not be "significantly less" and that it would be "a little less, but not significantly" different.

In April 2012, Mrs. Payne received the benefits calculation from Pentegra and Ms. Waller. The lump sum benefits that would be paid were more than $200,000.00 less than the estimate that was provided in October 2011. After learning that the benefits Mrs. Payne would receive were

5

significantly less than what she and Mr. Payne were told in October 2011, Mrs. Payne participated in a conference call with Ms. Waller, Mr. Samuals, and Lynn Phillips ("Mr. Phillips"), a representative of Pentegra, to discuss why there was such a large difference in benefit payments. Mr. Phillips explained that the discrepancy resulted from the difference between a retirement benefit versus an active death benefit. He explained that an active death benefit yielded a much lower benefit payment than a retirement benefit. When Mrs. Payne expressed her surprise at the large difference between the two types of benefits, Ms. Waller also stated that she was not aware that the two types of benefits yielded such a significant difference. Ms. Waller demonstrated insufficient knowledge of the difference regarding active death benefits and early retirement benefits, yet she was the Lead Expert for Compensation and Benefits at the OCC. Mrs. Payne asked whether the fact that Mr. Payne did not retire, but died in service, cost Mrs. Payne more than $200,000.00 in lump sum benefits. Mr. Phillips confirmed that it did. Mr. Payne had decided not to retire, relying on the faulty advice of Ms. Waller.

The Paynes frequently had talked with Ms. Waller who knew of Mr. Payne's imminent death and who was the individual most knowledgeable about benefits at the OCC. The Paynes had relied on Ms. Waller's advice regarding Mr. Payne's retirement and benefits. Additionally, the Paynes had relied on the benefits calculations provided by Pentegra. After relying on Ms. Waller's advice and Pentegra's benefits estimations, Mrs. Payne now will receive approximately $205,000.00 less in lump sum benefits or a difference in annuity payments which would total approximately $465,000.00 if Mrs. Payne lives to her anticipated life expectancy.

Mrs. Payne filed a written claim as the beneficiary of Mr. Payne's estate on December 27, 2012, pursuant to the disputed claims procedure in the summary plan description of the Pentegra Defined Benefit Plan. This disputed claim was denied. On May 22, 2013, Mrs. Payne filed a

6

request that the Pentegra Defined Benefit Plan Board review the denial of the December 27, 2012 claim. Mrs. Payne also filed a Federal Tort Claim Notice on August 29, 2013. Her Federal Tort Claim Notice was denied on February 21, 2014.

On February 28, 2014, Mrs. Payne initiated this lawsuit against the OCC and Pentegra. In her Complaint, Mrs. Payne asserted claims for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), promissory estoppel, breach of fiduciary duty, negligence, breach of contract, and breach of duty to exercise good faith. Each claim is based on the same set of facts: (1) Ms. Waller represented to the Paynes that their benefits would not be significantly different whether Mr. Payne retired and that he should continue working for an additional 120 days; (2) relying on Ms. Waller's representations, Mr. Payne did not retire and eventually died while still in service; and (3) because Mr. Payne died before he retired, the benefits payable to Mrs. Payne as Mr. Payne's beneficiary are approximately $205,000.00 less than if Mr. Payne had retired before his death.

On May 14, 2014, Pentegra filed a Motion to Dismiss Counts II–VI of Mrs. Payne's Complaint and to Strike her requests for compensatory and punitive damages and for a jury trial ([Filing No. 21](#)). Pentegra also filed an Answer to Count I of Mrs. Payne's Complaint on May 14, 2014 ([Filing No. 23](#)).

On June 26, 2014, the United States of America filed a Motion to Substitute substituting itself as the real party in interest in place of the OCC ([Filing No. 30](#)). It also filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction ([Filing No. 31](#)). The United States was substituted as a defendant for the OCC on July 16, 2014 ([Filing No. 35](#)).

7

On July 21, 2014, Mrs. Payne filed her responses to the Defendants' Motions to Dismiss (Filing No. 37, Filing No. 38). The United States filed a reply in support of its Motion to Dismiss on July 30, 2014 (Filing No. 39). Pentegra filed its reply brief on July 31 (Filing No. 40).

Approximately two months later, on October 9, 2014, Mrs. Payne filed her Motion for Leave to File Amended Complaint (Filing No. 47). In her proposed amended complaint, Mrs. Payne provides further explanation of the same set of facts to bolster her argument regarding a fiduciary relationship among Pentegra, the United States, and the Paynes. She also seeks to affix an ERISA label to her existing claim for breach of fiduciary duty against Pentegra, add a claim for breach of fiduciary duty under ERISA against the United States and Pentegra, and add claims for liability for breach of co-fiduciary duty under ERISA against the United States and Pentegra (Filing No. 47-1). The United States filed a response in opposition to the Motion for Leave to File Amended Complaint on October 22, 2014 (Filing No. 48), and Pentegra filed its response on October 27, 2014 (Filing No. 50). Mrs. Payne filed her reply brief on November 3, 2014 (Filing No. 51).

### III. DISCUSSION

The three motions pending before the Court are the United States' Motion to Dismiss, Pentegra's Motion to Dismiss and to Strike, and Mrs. Payne's Motion for Leave to File Amended Complaint. The Court will address each motion in turn.

**A.     The United States' Motion to Dismiss**

The United States seeks dismissal on the basis of sovereign immunity. The United States explains that absent an express waiver of sovereign immunity, it cannot be sued, and Mrs. Payne has not pointed to any statute that supports a waiver of sovereign immunity. Further, the United

States asserts that ERISA does not provide a waiver of sovereign immunity, and the Federal Tort Claims Act specifically prohibits the claims asserted by Mrs. Payne.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). When a plaintiff fails to identify both a statute that confers subject matter jurisdiction on the district court and a federal law that waives the United States' sovereign immunity, such failure "mandates the dismissal of the plaintiff's claim." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). In other words, a plaintiff must establish that a statute specifically authorizes suit and that Congress has conferred federal jurisdiction over such suits. *See id.* "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Waivers are to be strictly construed in favor of the United States and will not be implied. *Id.* "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* "In the absence of clear congressional consent, then, there is no jurisdiction in the . . . court to entertain suits against the United States." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal citation and quotation marks omitted).

The Federal Tort Claims Act provides a limited waiver of sovereign immunity by the United States for certain tort claims against the federal government. It allows "civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). But this limited waiver of sovereign immunity has several exceptions that leave sovereign immunity in place, thereby protecting the United States from suit. One such exception is the

misrepresentation exception, which prohibits "[a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

The United States explains that Mrs. Payne has failed to point to any statute that expressly waives the federal government's sovereign immunity in this case. None of the jurisdictional statutes that Mrs. Payne relied upon support a waiver. Her first claim, interference with contract rights and violation of rights under ERISA, is an ERISA claim, and as the United States explains, ERISA does not contain a provision that waives sovereign immunity. *See Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994) (29 U.S.C. § 1132 "gives plan participants the right to bring civil actions to redress violations of ERISA, [but] this section does not provide a waiver of sovereign immunity which would permit the suit to be brought against the United States"); *Palmatier v. Lockheed Martin Corp.*, 2014 U.S. Dist. LEXIS 51694, at *18 (N.D.N.Y Apr. 15, 2014) (same); *Middleton v. United States*, 2013 U.S. Dist. LEXIS 64765, at *5 (W.D. Va. May 7, 2013) (same); *Hartje v. FTC*, 1995 U.S. Dist. LEXIS 21049, at *7 (D. Minn. Dec. 4, 1995) ("The United States has not waived its sovereign immunity against claims brought under ERISA.").

Additionally, the United States explains that the misrepresentation exception to the Federal Tort Claims Act applies to Mrs. Payne's other claims asserted against the United States, thereby prohibiting her claims against the federal government. This exception prohibits "[a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Many courts have explained the scope of the misrepresentation exception, which effectively preserves sovereign immunity. *See Block v. Neal*, 460 U.S. 289, 296–97 (1983) (explaining that "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies" and "Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to

reliance on the Government's negligent misstatements"); *United States v. Neustadt*, 366 U.S. 696, 706–07 (1961) (holding that the breach of the "duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' . . . which there is every reason to believe Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in § 2680(h)"); *Janowsky v. United States*, 913 F.2d 393, 396–97 (7th Cir. 1990) ("*Neustadt* and *Block* instruct that a complaint alleging claims under the FTCA should be examined to determine whether the claims are based on the government's failure to use due care in communicating information upon which the recipient relies."); *see also Office of Personnel Management v. Richmond*, 496 U.S. 414, 430 (1990) (rejecting "estoppel" claim arising from erroneous advice from government employee because the claim was "in practical effect one for misrepresentation" and allowing the claim "would nullify a congressional decision against authorization of the same class of claims").

Each of Mrs. Payne's claims is based on (1) the OCC represented that benefits would not be significantly different regardless of whether Mr. Payne retired; (2) Mr. Payne relied on the representation and did not retire and eventually died while still in service; and (3) because Mr. Payne died before he retired, the benefits payable to Mrs. Payne as his beneficiary are approximately $205,000.00 less than if Mr. Payne had retired before his death. These claims are based on misrepresentations, and therefore, they are barred by the Federal Tort Claims Act's misrepresentation exception. In her response to the Motion to Dismiss, Mrs. Payne concedes, "Because Mrs. Payne's claims of promissory estoppel and negligence appear to not be cognizable under the Federal Tort Claims Act, Mrs. Payne, a widow, is left with no remedy by which to hold the OCC accountable." ([Filing No. 38 at 8](Filing No. 38 at 8).)

Regarding the United States' sovereign immunity from ERISA claims, Mrs. Payne claims that the United States cited only non-binding case law from other jurisdictions and that she could not find controlling case law, and thus, the United States is not immune from ERISA claims. This argument completely ignores Supreme Court precedent that requires a plaintiff to specifically cite to a statute that waives sovereign immunity, which Mrs. Payne has failed to do.

Mrs. Payne then asserts that she planned to amend her Complaint to add a 42 U.S.C. § 1983 or constitutional claim against the United States and to add Ms. Waller as a defendant to assert individual claims against Ms. Waller personally. When Mrs. Payne later filed her Motion for Leave to File Amended Complaint, her proposed amended complaint did not add constitutional claims against the United States or add Ms. Waller as a defendant.

Having failed to show a waiver of sovereign immunity, Mrs. Payne's ERISA and other claims against the United States cannot be sustained and must be dismissed. Therefore, the United States' Motion to Dismiss is **GRANTED** ([Filing No. 31](Filing No. 31)).

**B.    Pentegra's Motion to Dismiss and to Strike**

Pentegra asks the Court to dismiss Defendant Pentegra Retirement Services, to dismiss Counts II–VI of Mrs. Payne's Complaint, and to strike Mrs. Payne's requests for compensatory and punitive damages and for a jury trial. Counts II–VI of the Complaint are promissory estoppel, breach of fiduciary duty, negligence, breach of contract, and breach of duty to exercise good faith. Pentegra asserts that each of these five claims is preempted by ERISA.

Section 514(a) of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has consistently held that ERISA's preemption of state law is "clearly expansive." *Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141, 146 (2001). "We have held that a state law

relates to an ERISA plan if it has a connection with or reference to such a plan." *Id.* at 147 (internal quotation marks and citation omitted). The Seventh Circuit also has interpreted the preemption provision broadly. *See Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127–28 (7th Cir. 1992). Because of this statutory scheme, "[a] suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted." *Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 777 (7th Cir. 2006).

Mrs. Payne responds to Pentegra's Motion to Dismiss by unequivocally exclaiming, "Mrs. Payne is seeking to recover benefits due to her under Section 502(a)(1)(B) of ERISA and Pentegra agrees that the claims in this matter are covered under ERISA." ([Filing No. 37 at 7](Filing No. 37 at 7).) She further declares,

> To make the record clear (albeit it was already clear), Mrs. Payne is seeking to recover benefits due to her under Section 502(a)(1)(B) of ERISA. Specifically, Mrs. Payne is seeking "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* Mrs. Payne is not seeking injunctive relief under 502(a)(3).

([Filing No. 37 at 8](Filing No. 37 at 8).) Each of the claims asserted in this action is based on an alleged misrepresentation regarding retirement benefits and the resulting reduction in benefits awarded to Mrs. Payne. The claims seek an award of additional benefits under an employee defined benefit plan. These claims fall under the province of ERISA.

Pentegra argues that Mrs. Payne's state law breach of fiduciary duty claim (Count III) is preempted by ERISA because the claim relates to the employee defined benefit plan, which is covered by ERISA. Mrs. Payne asserts that her claim for breach of fiduciary duty was brought pursuant to ERISA, thus it cannot be preempted by ERISA.

Concerning fiduciary duties under ERISA, Congress provided for a civil action to be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under

13

section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 establishes the liabilities of a fiduciary who breaches his duties. *See* 29 U.S.C. § 1109. In enacting 29 U.S.C. §§ 1109 and 1132(a)(2) to provide remedies for a breach of fiduciary duties, Congress was concerned with "remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). "Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144. The Supreme Court, therefore, limited the remedies available for breach of fiduciary duties to the employee benefit plan itself, not to the individual beneficiaries.

Later, the Supreme Court in *LaRue*, recognized that 29 U.S.C. § 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, but the Court expanded the scope of relief under other ERISA-covered plans. The Court focused on the distinction between "defined contribution plans" and "defined benefit plans,"[1] and determined that under defined contribution plans the ERISA provision "authorize[d] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). But this is not the case here. The parties have agreed that the plan at issue here is a "defined benefit plan." (Filing No. 23 at 18, ¶¶62–63.) Thus, the concerns that the Court had in *LaRue* regarding fiduciary duties for participants' individual accounts are not applicable here. Therefore, the rule in *Russell* is applicable—individual remedies are not available for alleged breaches of fiduciary duties under defined benefit plans. Remedies for any breach of a fiduciary duty under the defined benefit plan in this case are available to the plan, not to individual participants or beneficiaries.

---

[1] *Compare* 29 U.S.C. § 1002(34) ("The term 'individual account plan' or 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account . . . .") *with* 29 U.S.C. § 1002(35) ("The term 'defined benefit plan' means a pension plan other than an individual account plan.").

14

If Mrs. Payne's claim for breach of fiduciary duty is brought as a state law claim, it is preempted by ERISA and therefore must be dismissed. If the claim is brought under ERISA, it is not preempted, but it still must be dismissed because, under ERISA, claims are not available for individual relief for a breach of fiduciary duty under defined benefit plans. Mrs. Payne's breach of fiduciary duty claim (Count III) is dismissed.

Mrs. Payne concedes in her response to the Motion to Dismiss that her claims for breach of contract and breach of duty to exercise good faith (Counts V and VI) are preempted by ERISA and should be dismissed (Filing No. 37 at 9). Because these claims are preempted by ERISA, they are dismissed.

This leaves the promissory estoppel (Count II) and negligence (Count IV) claims. Pentegra not only asserts that these claims are preempted by ERISA but also that Mrs. Payne did not allege any conduct by Pentegra under these claims, and therefore, the claims were asserted only against the United States. Mrs. Payne failed to respond to either of these arguments regarding the promissory estoppel and negligence claims. As such, she conceded these points. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points."); *Cintora v. Downey*, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."); *Sequel Capital, LLC v. Pearson*, 2010 U.S. Dist. LEXIS 109087, at *22 (N.D. Ill. Oct. 12, 2010) (same); *Thomas v. Am. Family Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 92440, at *13–14 (N.D. Ind. Nov. 13, 2008)

(same). Pentegra's argument regarding preemption of these claims is well taken, and because Mrs. Payne failed to respond to the argument, the Court dismisses these two claims.

Pentegra asserts that Pentegra Retirement Services is a communicative name and not a legal entity. Pentegra argues that ERISA claims for the denial of benefits can only be brought against the plan or plan administrator, citing *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We have continually noted that ERISA permits suits to recover benefits only against the Plan as an entity."). Thus, Pentegra explains, Mrs. Payne's litigation, which seeks to recover denied benefits, should proceed only against Defendant Pentegra Defined Benefit Plan for Financial Institutions and Defendant Plan Administrator of the Pentegra Defined Benefit Plan for Financial Institutions. Mrs. Payne failed to respond to this argument of Pentegra. The Court views Mrs. Payne's failure to address this argument as a concession and grants Pentegra's request to dismiss Pentegra Retirement Services as a defendant in this matter.

Regarding Pentegra's Motion to Strike Mrs. Payne's requests for compensatory and punitive damages and for a jury trial, Pentegra notes that extracontractual damages are not available under ERISA for claims to recover benefits, citing *Russell*, 473 U.S. at 148; *Clair v. Harris Trust and Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999); and *Harsch v. Eisenberg*, 956 F.2d 651, 655–56, 660–61 (7th Cir. 1992) (extracontractual compensatory and punitive damages are not available). "One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written." *Pohl*, 956 F.2d at 128. Pentegra also asserts that Mrs. Payne does not have a right to a jury trial for her ERISA claim, relying on *Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 484 (7th Cir. 2007). Like *Patton*, *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998) also explains that there is no right to a jury trial in an ERISA case.

Mrs. Payne responds that "[i]f the Court adopts ERISA jurisdiction over Pentegra, then Mrs. Payne agrees that she is not seeking punitive damages." ([Filing No. 37 at 9](#).) She then explains that she is "seeking damages to compensate her and make her whole for Pentegra's unlawful denial of the additional pension benefits due to her under the Pentegra DB Plan," and "Pentegra even admits in its Brief that she is entitled to these types of compensatory damages: 'Plaintiff is not entitled to any form of compensatory damages or any other extra-contractual relief over and above the recovery of any benefits that may be due under her ERISA-controlled plan.'" ([Filing No. 37 at 9](#).) Mrs. Payne concedes that she is not seeking extracontractual compensatory or punitive damages above any amount that may be due under the employee defined benefit plan. Therefore, the Court grants Pentegra's Motion to Strike any request for extracontractual compensatory or punitive damages. Mrs. Payne failed to respond to Pentegra's argument regarding a right to a jury trial. The Court views this as a concession on this point and grants Pentegra's Motion to Strike the request for a jury trial.

Pentegra's Motion to Dismiss Defendant Pentegra Retirement Services, Motion to Dismiss Counts II–VI of Mrs. Payne's Complaint, and Motion to Strike Mrs. Payne's requests for extracontractual compensatory and punitive damages and for a jury trial ([Filing No. 21](#)) is **GRANTED**.

**C.     Mrs. Payne's Motion for Leave to File Amended Complaint**

Mrs. Payne filed a Motion for Leave to File Amended Complaint, asserting that amendment was required to clarify her claim for breach of fiduciary duty and to add other claims related to fiduciary duties. The proposed amended complaint gives further explanation of the same set of facts to bolster her argument regarding fiduciary relationships and duties among the parties.

17

The Court freely gives leave to amend when justice so requires. But this "do[es] not mandate that leave be granted in every case." *Park*, 297 F.3d at 612. If the amendment would be futile, then the Court may deny leave to amend. *Id.* Amendment is futile if it "fails to cure the deficiencies in the original pleading, or could not survive a [] motion to dismiss." *Perkins*, 939 F.2d at 472.

The United States asserts that Mrs. Payne's amendment is futile because she fails to show any waiver of sovereign immunity in her proposed new allegations and new claims. The proposed new claims are asserted under ERISA, but as explained above, Mrs. Payne failed to point to any ERISA provision that waives sovereign immunity. Therefore, as to the United States, Mrs. Payne's proposed amended complaint is futile. Additionally, as to Pentegra, the amendment is futile because it does nothing to cure the original Complaint's preemption problem or to address the rule that remedies for breach of fiduciary duty are only available to the defined benefit plan, not to individual beneficiaries, as discussed above. Because the amendment is futile, the Court **DENIES** Mrs. Payne's Motion for Leave to File Amended Complaint (Filing No. 47).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss filed by the United States (Filing No. 31), **GRANTS** the Motion to Dismiss and to Strike filed by Pentegra (Filing No. 21), and **DENIES** the Motion for Leave to File Amended Complaint filed by Mrs. Payne (Filing No. 47). Defendants the United States of America and Pentegra Retirement Services are **DISMISSED**. Mrs. Payne's claim for Interference with Exercise of Rights and/or Violation of Rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (Count I) remains pending against Defendants Pentegra Defined Benefit Plan for Financial

Institutions and Plan Administrator of the Pentegra Defined Benefit Plan for Financial Institutions.

Accordingly, no final judgment will issue at this time.

**SO ORDERED.**

Date: 3/3/2015

*[Signature: Tanya Walton Pratt]*
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sara A. Weinberg
JACKSON LEWIS LLP – Chicago
weinbers@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS P.C. – Indianapolis
padgettm@jacksonlewis.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov