UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER A. PAYNE, Individually and as Personal Representative of the Estate of Mark R. Payne, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:14-cv-00309-TWP-MJD ) |
| PENTEGRA DEFINED BENEFIT PLAN FOR FINANCIAL INSTITUTIONS, and PLAN ADMINISTRATOR OF THE PENTEGRA DEFINED BENEFIT PLAN FOR FINANCIAL INSTITUTIONS, | ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Pentegra Defined Benefit Plan for Financial Institutions and Plan Administrator of the Pentegra Defined Benefit Plan for Financial Institutions (collectively, "Pentegra") (Filing No. 71). After being denied retirement benefits on behalf of her late husband, Mark R. Payne ("Mr. Payne"), Plaintiff Jennifer A. Payne ("Mrs. Payne") asserted a claim to recover benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA"). After successfully moving to dismiss all but one of Mrs. Payne's claims, Pentegra filed a Motion for Summary Judgment on November 9, 2015, asserting that the Board of Directors' denial of retirement benefits was not arbitrary or capricious and was in accordance with the Pentegra Defined Benefit Plan ("Pentegra DB Plan"). For the following reasons, the Court **GRANTS** Pentegra's Motion for Summary Judgment.

## I.     BACKGROUND

**A.     Factual Background**

Mr. Payne, the late husband of Plaintiff Mrs. Payne, worked for more than thirty years for the Federal Home Loan Bank, which was merged into the Office of the Comptroller of the Currency ("the OCC"). Mr. Payne worked as a field manager in the Indianapolis, Indiana office and, as an employee, was a participant in the Pentegra DB Plan which is a non-profit, IRS qualified, tax-exempt, pension plan and trust through which Federal Home Loan Banks, Saving and Loan Associations and similar institutions, or any other federally insured financial institution may cooperate in providing for the retirement of their employees. The OCC engaged or assigned the Pentegra DB Plan to Pentegra, as the third-party administrator of the Pentegra DB Plan.

While employed by the OCC, Mr. Payne was diagnosed with a brain tumor in December 2010. After his first surgery on December 27, 2010, the Paynes learned that Mr. Payne's tumor was a gliablastoma tumor, the deadliest type of brain tumor. Mr. Payne's physicians informed him that the life expectancy for this type of tumor was approximately twelve to sixteen months. During the next fifteen months, Mr. Payne endured two additional surgeries as well as weeks of radiation and chemotherapy. Tragically, Mr. Payne also experienced seizures, memory loss, difficulties in speech and comprehension, and other neurological deficits prior to his death on March 5, 2012.

Shortly after Mr. Payne's diagnosis in December 2010, the Paynes began working with Valerie Waller ("Ms. Waller"), the Lead Expert for Compensation and Benefits at the OCC's office in Washington, D.C., to discuss Mr. Payne's life insurance and pension benefits. Mr. Payne wanted to ensure that his wife and their two children would be taken care of after his death. The Paynes sought advice from Ms. Waller regarding the full impact of their options under the Pentegra DB Plan. The Paynes and Mr. Payne's supervisor, Jill Hoyle ("Ms. Hoyle"), communicated with

Ms. Waller regularly to discuss questions and to confirm information related to Mr. Payne's life insurance and the Pentegra DB Plan.

On January 1, 2011, Pentegra sent Mr. Payne a statement of his annual retirement benefits, explaining that his active service death benefit, as of January 1, 2011, was $691,332.00, when expressed as a single payment. In October 2011, Mr. Payne requested that Ms. Waller provide pension calculations as of November 1, 2011 and April 1, 2012, so that the Paynes could understand their various options. Mr. Payne also requested that all options be explained to him in detail. The Paynes wanted this information to decide which option would benefit them the most. In mid-October 2011, Mr. Payne received an estimate of the pension benefits from Pentegra and Ms. Waller. The estimated pension benefit for early retirement on November 1, 2011, was a lump sum payout of approximately $975,557.00, or an annuity of approximately $57,480.00. The Paynes decided that the annuity was the best option as it provided a lifetime payout to Mrs. Payne.

In January 2012, the Paynes, Ms. Waller, and Ms. Hoyle participated in a telephone conference call regarding Mr. Payne's options. During the call, Ms. Waller advised Mr. Payne to wait 120 days before he filed for a disability retirement. Ms. Waller explained there was no reason for Mr. Payne to retire earlier than the 120 days. However, Ms. Waller failed to advise the Paynes that the pension figures would differ substantially if Mr. Payne died while in active service rather than after he retired. When the benefits calculation was eventually provided by Pentegra, Ms. Waller admitted that she did not know there would be a significant difference in benefits based on retirement. Ms. Waller was incorrect in her understanding when she advised the Paynes in January 2012.

Mr. Payne died on March 5, 2012, while he was still in active service with the OCC. He did not retire prior to his death. Because of this, the Pentegra DB Plan never received a termination

form from the OCC indicating that Mr. Payne had terminated employment prior to the date of his death. On March 15, 2012, ten days after Mr. Payne died, Mrs. Payne spoke with Ms. Waller and Damien Samuals ("Mr. Samuals"), another OCC employee, regarding Mr. Payne's pension benefits. Ms. Waller explained that the annuity payout had not been calculated but stated that it would not be significantly different from the information that was sent to the Paynes in October 2011. Ms. Waller specifically stated that it would not be "significantly less" and that it would be "a little less, but not significantly" different.

In April 2012, Mrs. Payne received the benefits calculation from Pentegra. The lump sum benefits that would be paid were more than $200,000.00 less than the estimate that was provided in October 2011. After learning that the benefits would be significantly less than what the Paynes were told in October 2011, Mrs. Payne participated in a conference call with Ms. Waller, Mr. Samuals, and Lynn Phillips ("Mr. Phillips"), a representative of Pentegra, to discuss why there was such a large discrepancy in benefit payments. Mr. Phillips explained that the discrepancy resulted from the difference between a retirement benefit versus an active death benefit. He explained that an active death benefit yielded a much lower benefit payment than a retirement benefit. When Mrs. Payne expressed her surprise at the large difference between the two types of benefits, Ms. Waller also stated that she was not aware that the two types of benefits yielded such a significant difference. Mrs. Payne asked whether the fact that Mr. Payne did not retire, but died in service, cost her more than $200,000.00 in lump sum benefits. Mr. Phillips confirmed that it did. Mr. Payne had decided not to retire, relying on the faulty advice of Ms. Waller.

The Paynes frequently talked with Ms. Waller who knew of Mr. Payne's imminent death and who was the individual most knowledgeable about benefits at the OCC's office. The Paynes relied on Ms. Waller's advice regarding Mr. Payne's retirement and benefits. Additionally, the

Paynes relied on the benefits calculations provided by Pentegra. Because Mr. Payne died while in active service with the OCC instead of retiring before his death, Mrs. Payne was entitled to approximately $205,000.00 less in lump sum benefits.

As the beneficiary of Mr. Payne's estate, Mrs. Payne filed a written claim with the Administrator of the Pentegra DB Plan on December 27, 2012, pursuant to the disputed claims procedure in the summary plan description of the Pentegra DB Plan. She requested the additional $205,000.00, asserting that because the Paynes relied on the advice of Ms. Waller, Mrs. Payne was entitled to retirement benefits rather than the active service death benefits. This disputed claim was denied on March 22, 2013. In denying the claim, Pentegra explained that Mr. Payne was in active service at the time of his death, rather than retired, because Mr. Payne did not terminate his employment with the OCC prior to his death, and thus, he was entitled to active service death benefits, not retirement benefits. Pentegra also explained that the active service death benefits had been described to the Paynes in the January 2011 statement as well as the retirement benefits in the October 2011 correspondence.

On May 22, 2013, Mrs. Payne requested that the Pentegra DB Plan Board of Directors ("the Board") review the denial of the December 27, 2012 claim. On October 10, 2013, Pentegra responded to Mrs. Payne and explained that the Board had reviewed and upheld Pentegra's decision to deny the claim for retirement benefits. Pentegra explained the reasons for the Board's denial of the claim and noted that the Pentegra DB Plan must pay benefits according to the plain terms and regulations of the Pentegra DB Plan.

**B.    Procedural Background**

On February 28, 2014, Mrs. Payne initiated this lawsuit against the OCC and Pentegra. In her Complaint, Mrs. Payne asserted claims for violations of ERISA, promissory estoppel, breach

of fiduciary duty, negligence, breach of contract, and breach of duty to exercise good faith. Each claim was based on the same set of facts: (1) Ms. Waller represented to the Paynes that their benefits would not be significantly different whether Mr. Payne retired and that he should continue working for an additional 120 days; (2) relying on Ms. Waller's representations, Mr. Payne did not retire and eventually died while still in service; and (3) because Mr. Payne died before he retired, the benefits payable to Mrs. Payne as Mr. Payne's beneficiary are approximately $205,000.00 less than if Mr. Payne had retired before his death.

In May 2014, Pentegra filed a motion to dismiss all claims except the ERISA claim. Pentegra also filed a motion to strike Mrs. Payne's request for compensatory and punitive damages and her jury demand. In June 2014, the OCC (through the United States as its substituted party) filed a motion to dismiss based on sovereign immunity. In July 2014, Mrs. Payne responded to the motions and explained that she was "seeking to recover benefits due to her under Section 502(a)(1)(B) of ERISA" and was "not seeking injunctive relief under 502(a)(3)." (Filing No. 37 at 8.) Then in October 2014, Mrs. Payne requested leave to amend her Complaint.

On March 3, 2015, the Court dismissed all of Mrs. Payne's claims except Count I regarding the unpaid benefits under § 502(a)(1)(B) of ERISA (Filing No. 52). The Court also granted Pentegra's motion to strike the OCC's motion to dismiss. This Order left the ERISA claim against Pentegra as the only remaining claim. On November 9, 2015, Pentegra filed its Motion for Summary Judgment, asserting that the Board's denial of retirement benefits was not arbitrary or capricious and was in accordance with the plain regulations of the Pentegra DB Plan because Mr. Payne was not retired at the time of his death.

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

The standard of review of the denial of benefits under Section 502(a)(1)(B) of ERISA is unique, however, because the Court uses a "*de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority, then denial of benefits is reviewed under the "arbitrary and capricious" standard. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011); *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860–61 (7th Cir. 2009). "Under

the arbitrary and capricious standard, the reviewing court must ensure only that a plan administrator's decision has rational support in the record. Put simply, an administrator's decision will not be overturned unless it is downright unreasonable." *Edwards*, 639 F.3d at 360 (citations and quotation marks omitted).

Review under this deferential standard is not a "rubber stamp." *Hackett v. Xerox Corp. Long–Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). The Court's review focuses on whether:

> (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Sisto v. Ameritech Sickness & Accident Disability Benefit Plan,* 429 F.3d 698, 700 (7th Cir. 2005) (citation omitted).

Pentegra asserts that the deferential "arbitrary and capricious" standard of review applies in this case because the Pentegra DB Plan gives the "Board exclusive right and full discretionary authority to interpret the Regulations and any questions arising under or in connection with the administration of the Pentegra DB Plan" and "to determine . . . eligibility for membership and benefits, and the amount and mode of all contributions, benefits and other payments under the Regulations." ([Filing No. 72-1 at 153](#).) Pentegra provided the only designated evidence on this point, and Mrs. Payne failed to respond to this argument regarding the standard of review or designate any evidence. Assuming that Mrs. Payne does not dispute the proposed standard of review, the Court reviews the Board's (and Pentegra's) decision to deny retirement benefits under the arbitrary and capricious standard.

### III. DISCUSSION

Mrs. Payne currently receives active service death benefits under the Pentegra DB Plan as Mr. Payne's beneficiary as a result of his many years of employment with the OCC. However, Mrs. Payne seeks to recover retirement benefits, an additional $205,000.00, under the Pentegra DB Plan pursuant to Section 502(a)(1)(B) of ERISA. (*See* Filing No. 37 at 8.) "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Pentegra argues that according to the plain and unequivocal terms of the Pentegra DB Plan, Mrs. Payne is due and receiving active service death benefits because Mr. Payne died while he was actively employed by the OCC. Under the plain terms of the Pentegra DB Plan, Mr. Payne, and thus Mrs. Payne, is not entitled to retirement benefits because Mr. Payne did not retire from his employment prior to his death.

Pentegra lays out the plain terms of the Pentegra DB Plan and designates evidence to support its explanation. The president of the Pentegra DB Plan is the chief administrative officer and, for purposes of ERISA, also is the plan administrator. The Board is the "named fiduciary." The general administration of the Pentegra DB Plan and the general responsibility for carrying out the provisions of the Pentegra DB Plan's regulations is placed in the Board. The members of the Board must be members of the Pentegra DB Plan. (Filing No. 72-1 at 151.)

Under the terms of the Pentegra DB Plan,

> The Board shall have the exclusive right and full discretionary authority to interpret the Regulations and any questions arising under or in connection with the administration of the Pentegra DB Plan, including without limitation, the authority to determine eligibility for employer participation, eligibility for membership and benefits, and the amount and mode of all contributions, benefits and other payments under the Regulations.

9

([Filing No. 72-1 at 153](#)).  The Pentegra DB Plan unequivocally states that "[n]o Employer shall under any circumstances or for any purpose be deemed an agent of the Board, the Trustee or the Pentegra DB Plan." *Id.* at 152.

The Pentegra DB Plan provides that "[i]n lieu of the basic death benefit, . . . an Employer may adopt an active service death benefit which is payable upon the death of a Member in Service." *Id.* at 66.  A "Member" is defined as "[a]n Employee enrolled in the membership of the Pentegra DB Plan's Comprehensive Retirement Program." *Id.* at 12.  And an "Employee" is defined, in part, as "any person in the Service of an Employer who receives a Salary." *Id.* at 9.  Under the terms of the Pentegra DB Plan, "Service" is defined, in part, as "Employment with an Employer." *Id.* at 17.  Lastly, a "Retiree" is defined as "[a] former Member who has been retired." *Id.* at 14.

Based on these plain definitions and provisions under the Pentegra DB Plan, Pentegra asserts that on March 5, 2012, Mr. Payne died while in "active service" with the OCC.  Prior to his death, Mr. Payne never retired.  "The Pentegra DB Plan never received a termination form from the OCC indicating that Mr. Payne had terminated employment prior to the date of his death." ([Filing No. 72-2 at 32](#).)  As a result, under the terms of the Pentegra DB Plan, Mr. Payne was entitled to a death benefit, not a retirement benefit.  Furthermore, under the unequivocal terms of the Pentegra DB Plan, no statements or representations regarding retirement and death benefits made by Ms. Waller, as an employee of OCC, could bind the Board or the Pentegra DB Plan.

Pentegra explains that ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "specify[ing] the basis on which payments are made to and from the plan."  29 U.S.C. § 1102(b)(4).  Moreover, the plan administrator and fiduciaries are statutorily required to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the

10

provisions of [Title I] and [Title IV]" of ERISA. 29 U.S.C. § 1104(a)(1)(D). As the Supreme Court noted, "ERISA provides no exemption from this duty when it comes time to pay benefits." *Kennedy v. Plan Administrator for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009). Therefore, Mrs. Payne's claim for benefits "stands or falls by the terms of the plan." *Id.* (citation and quotation marks omitted).

Pentegra explains that the Board's decision to deny retirement benefits to Mrs. Payne—when Mr. Payne did not retire from the OCC before his death—was based on a straightforward application of the plain definitions and provisions of the Pentegra DB Plan. Importantly, Mrs. Payne does not dispute that Mr. Payne died while actively employed with the OCC. Thus, Pentegra asserts, the decision to deny retirement benefits and to provide only death benefits was not arbitrary or capricious.

In response to the Motion for Summary Judgment, Mrs. Payne does not put forward any disputes of material fact. She also does not affirmatively argue that the Board's decision to deny retirement benefits was arbitrary or capricious or that the decision was not based on the evidence and the facts. In fact, Mrs. Payne does not even refute Pentegra's argument and evidence that the Board's decision was based on the plain language of the Pentegra DB Plan and was not arbitrary or capricious. Instead, Mrs. Payne asserts that the policy was confusing, the Payne's relied on the negligent directives of Ms. Waller, an employee/representative of Pentegra and Pentegra failed to properly train Ms. Waller. In essence, Mrs. Payne merely reargues her fiduciary duty argument that she raised during the motion to dismiss proceedings. However, the Court dismissed Mrs. Payne's claims for breach of fiduciary duty, promissory estoppel, negligence, breach of contract, and breach of duty to exercise good faith after the parties had fully briefed those claims.

Mrs. Payne did not respond to Pentegra's argument that the Board's decision was reasonable and based on the plain language of the Pentegra DB Plan. ERISA requires that employee benefit plans must be established and maintained pursuant to a written instrument that specifies the basis on which payments are made to and from the plan, and the plan administrator and fiduciaries must act in accordance with the documents and instruments governing the plan. Given that ERISA provides no exemption from these duties when it comes time to pay benefits, and claims for benefits stand or fall by the terms of the plan, the Court cannot find that the Board acted arbitrarily or capriciously when it denied Mrs. Payne's claim for retirement benefits, after Mr. Payne failed to retire from the OCC. Thus, Mrs. Payne's ERISA claim must fail.

The Court briefly addresses footnote 4 of Mrs. Payne's Response Brief in opposition to the Motion for Summary Judgment. (*See* Filing No. 75 at 12). In that footnote, Mrs. Payne asks the Court to reconsider its prior rulings in the Order on the motions to dismiss and to strike the motion for leave to file an amended complaint ([Filing No. 52](#)). The Court declines to consider and address Mrs. Payne's request to reconsider the Order for several reasons. First, a footnote in a response brief is not the proper vehicle to make such a motion. *See* S.D. Ind. Local Rule 7-1 ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."). Next, motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, however, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions. *Smith v. Utah Valley Univ.*, 2015 U.S. Dist. LEXIS 70271, at *3–4 (S.D. Ind. June 1, 2015). A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Thus, Mrs. Payne's request is not timely. Finally, even if the Court were to consider the merits of her request to reconsider, the motion would be denied because Mrs. Payne has advanced no argument and provided no case law to support her

request. A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Mrs. Payne has not shown a manifest error of law or that an amended complaint would not be futile, because she has not shown any waiver of sovereign immunity.

## IV.     CONCLUSION

The Pentegra DB Plan's Board of Directors did not abuse its discretion in denying retirement pension benefits under the Plan when it determined, consistent with the express terms of the Plan, that at the time of his death, Mr. Payne was not a retiree was only eligible to recover active service death benefits. While the decision of the board may seem unfair, it is appropriate under the law and the Court cannot say that it was unreasonable. Accordingly, the Court **GRANTS** Pentegra's Motion for Summary Judgment ([Filing No. 71](Filing No. 71)). Judgment is entered in favor of Pentegra on Mrs. Payne's sole ERISA claim, and Mrs. Payne's action is **dismissed**. Final appealable judgment will issue under separate order.

**SO ORDERED.**

Date: 9/30/2016

DISTRIBUTION:

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Michael W. Padgett
JACKSON LEWIS P.C.
padgettm@jacksonlewis.com

Kirsten A. Milton
JACKSON LEWIS P.C.
kirsten.milton@jacksonlewis.com

William H. Payne, IV
JACKSON LEWIS P.C.
william.payne@jacksonlewis.com